UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**
MAR 3 1 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

KEVIN CROOK; C & A VENDING, }
INC., d/b/a Crook & Associates, Inc., }
}
Plaintiffs, }
}
vs. }  CASE NO. CV 00-B-0487-S
}
CARRIER TRANSICOLD, }
}
Defendant. }

**ENTERED**
APR - 1 2003

## MEMORANDUM OPINION

On March 29, 2002, the court entered an Order granting the Motion for Summary Judgment filed by Carrier Transicold ("Carrier").[1] The court reserved the right to enter a Memorandum Opinion in support of its Order. Plaintiffs have indicated an intent to appeal the court's entry of summary judgment in favor of defendant, Carrier. Therefore, this Memorandum Opinion is entered in support of the court's entry of summary judgment in favor of defendant, Carrier. All claims in the case are now resolved and the court's entry of summary judgment in favor of defendant Carrier is now ripe for appeal.

Plaintiffs, Kevin Crook ("Crook") and C & A Vending Inc., d/b/a Crook and Associates, Inc., operate a vending business using a specially modified truck to transport frozen and refrigerated goods in and around Birmingham, Alabama. The storage compartments on the truck are cooled by an Integra 30S cooling unit ("Integra"), which is manufactured by Carrier. Plaintiffs assert claims against Carrier for fraudulent misrepresentation, fraudulent suppression, breach of express warranty, breach of implied warranties, and under the Alabama Extended

---

[1]This entity is separate from, and not to be confused with another defendant Carrier Transicold South ("CT South").

Manufacturer's Liability Doctrine, all arising from recurrent problems with the Integra unit, and Carrier's failed attempts to repair it.[2] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

## I. FACTUAL SUMMARY

Plaintiffs in this case are composed of the individual who owns the truck, Crook, and the corporation formed in 1995 by Crook, C & A Vending, Inc., to engage in a vending business in Birmingham, Alabama. The truck is a modified Isuzu Omnivan with two specially designed storage compartments built into the vehicle; Crook keeps frozen goods in one compartment, and refrigerated goods in the other compartment. This compartment configuration is referred to as a dual compartment or dual temperature application.

In November 1997, Crook purchased the vehicle from Equipment Innovators, Inc. ("EI"), which designed the refrigerated compartments after extensive discussions regarding plaintiffs' desired specifications.[3] (*See* Pls. Ex. K, Bill of Sale of 10/10/1997.) By EI's design, the cooling unit for plaintiffs' configuration was an Integra. Carrier did not participate in the design of the

---

[2]Plaintiffs concede that defendant is entitled to judgment as a matter of law on the remaining claims in the Complaint and the court will not address them in the body of this opinion. These claims which are due to be dismissed with prejudice are for breach of contract, fraudulent misrepresentations stemming for the "sale," and negligent repair. Although plaintiff additionally concedes summary judgment as to the claim based on the Alabama Extended Manufacturers' Liability Doctrine, the court will briefly write to this claim.

[3]Crook actually owns two vehicles that he uses in his vending business, the other being a Ford 350 Omnivan. Crook also purchased the Ford from EI. In February 1997, EI sold its assets to Davidson-Kennedy Company, Inc. ("D-K"). (Edwards Dep. at 16.) Thus, after February, 1997, Crook was dealing with D-K and not EI. (*Id.*) Despite the sale of assets, many employees of EI remained with D-K, including Doug Edwards and Drew Lindsey, the individuals Crook had dealt with regarding the Ford purchase and the Isuzu purchase. (*Id.* at 16-18.)

dual compartment used on the Isuzu, nor did it sell the Integra directly to plaintiffs, or execute a contract with Crook. (Crook Dep. at 60, 202.) Rather, Carrier sold the unit to CT South, which in turn sold the unit to EI. (*See* Glessing Dep. at 27-28; Def. Ex. A, Purchase Order of 9/18/1997.) Carrier was unaware of the sale of the particular Integra installed in plaintiffs' vehicle. (Glessing Dep. at 42-43.)

Almost immediately after taking possession of the Isuzu, Crook began to experience problems with both the dual temperature application as a whole, as well as with the Integra itself. (Crook Dep. at 88-89.) As an example of the problems associated with the Integra, Crook testified that he was unable to maintain the temperature he desired in the storage compartments. (*Id.* at 33-71, 74-76.) Crook specifically remembers taking the Isuzu in for service around Thanksgiving in 1997. (*Id.* at 89-92.) Crook contacted D-K, which put him in touch with Transport Refrigeration, the local certified and authorized Carrier dealer, for purposes of repair. (*Id.* at 194; *see also* Def.'s Ex. .) According to the repair records, and warranty history, (*see* Def. Exs. C and D), which span 1998 and 1999, Transport Refrigeration worked on plaintiffs' vehicle numerous times. It is clear that through course of dealing, the parties considered the warranty to be in force, as the repairs were done pursuant to the Integra warranty.[4] (*See id.*; *see also* Def. Ex.

---

[4]The following language is included in Carrier's warranty:
The foregoing warranties are expressly given in lieu of any other warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose which are hereby disclaimed.

Limitation of Liability
Carrier Transicold Division, Carrier Corporatioin, and their affiliates shall not be liable for any Special, Incidental, or Consequential Damages or losses of a commercial nature arising out of a malfunctioning products or its parts or components thereof, or as a result of defects in material or workmanship. The owner's sole and exclusive remedy and Carrier Transicold Division's sole and

F, Warranty Registration (indicating that "C & A Vending" registered their Carrier warranty with Transport Refrigeration on 5/19/1999).[5]) Furthermore, Crook testified that he did not pay for the repairs performed by Transport Refrigeration.[6]

In the course of numerous repairs, Transport Refrigeration told Crook that he would have to install a much more expensive refrigeration system to accomplish what he wanted to do, and that the Carrier Integra could not work in the dual application. (Crook Dep. II at 102-05.) After hearing this opinion, Crook asked Transport Refrigeration to get Carrier involved. At the request of Johnny Young, an employee of Transport Refrigeration, Dave Glessing and James Gordon from Carrier traveled to Birmingham in October, 1998, to work on the Integra installed in plaintffs' Isuzu. (Glessing Dep. at 46.) This was the first time anyone from Carrier had inspected the Integra. In his deposition, Glessing stated that he was surprised to find a dual compartment application because he had never seen an Integra used in that manner before. (*Id.* at 49-50.) Glessing was concerned that the Integra would not be able to adequately freeze and refrigerate both storage compartments simultaneously. Glessing authorized certain repairs to Integra at that time.

---

       exclusive liability shall be limited to the repair or replacement of parts or components contained in the products identified above which under normal use and service malfunction as a result of defects in material or workmanship, subject to the provisions and limitations stated above.

(Def. Ex. B (emphasis removed).)

    [5]The registration applied to the replacement Integra.

    [6]The only repair that was not fully covered under the warranty occurred on October, 26, 2000, after the one-year warranty had expired. (*See* Pls. Ex. E.)

In February, 1999, Glessing traveled to Birmingham a second time to examine the Integra. Upon discovering that the unit was still not functioning properly, he decided to replace the original Integra with a new unit, which he thought would solve plaintiffs' problems. (*Id.* at 53-54, 138-39.) Glessing contends that during this trip he informed Crook that he believed the Integra would not work in the dual temperature application. (*Id.* at 54-55.) Glessing asserts that he told Crook "we could get his unit working, but that we didn't stand behind the application; that he would have to go to Equipment Innovators for that." (*Id.* at 55.) Crook claims that Glessing, and others at Carrier, represented to him that Carrier would repair the problems, that Carrier would take care of him, and that Carrier would satisfy him. (*See* Crook Dep. at 155-56, 159, 175-76, 203; Crook Dep. II at 66-68.) Crook admits that he met with Carrier, that it made inspections of the truck and promised to replace the entire unit, and did in fact replace the Integra in 1999. (Crook Dep. at 157-61; Def. Ex. G.).

Eventually, after the replacement unit continued to function poorly, Tom Ondo, an employee at Carrier concluded that the Integra could not work in plaintiffs' dual compartment application. (*See* Pls. Ex. N, Letter from Ondo to Edwards of 9/10/1999.) Glessing also testified that he believed that the Integra did not perform at the level it was designed to because it was being using in an application for which it was not designed. (Glessing Dep. at 91.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

**1. Fraudulent Misrepresentation**

The elements of a claim for fraudulent misrepresentation are: (1) the defendant made a false representation, (2) concerning a material existing fact, (3) upon which the plaintiff relied, and (4) reliance on which proximately caused the plaintiff's damages. *See Taylor v. Moorman Mfg. Co.*, 475 So. 2d 1187, 1189 (Ala. 1985). Defendant contends that plaintiffs cannot establish actionable fraud based on Glessing's statements that Carrier would stand by the Integra, or it would repair the Integra. In *Jenkins v. Landmark Chevrolet, Inc.*, 575 So. 2d 1157 (Ala. Civ. App. 1991), the court found representations made by employees in defendant's automobile service department that they would fix plaintiff's vehicle as best as they could did not constitute

6

actionable fraud. The court stated that "in order for a promise to constitute an actionable fraudulent misrepresentation, there must be, at the time the promise is made, a present intent not to perform as promised." *Jenkins*, 575 So. 2d at 1161 (quoting *Ligon Furniture Co. v. O.M. Hughes Ins., Inc.*, 544 So. 2d 883, 891 (Ala. 1989)). Although it appears that the defendant was unable to repair all the defects in plaintiff's vehicle, the court held that summary judgment in favor of the defendant on the misrepresentation claim was appropriate because plaintiff had not presented substantial evidence indicating that defendant "had a present intent not to fix the vehicle when it made the promise that it would." *Id.*

In this case, like in *Jenkins*, plaintiffs have not presented sufficient evidence that Carrier did not intend to live up to its promise to fix the Integra. To the contrary, the evidence shows that Carrier made extensive efforts to address the problems with the Integra unit. Carrier paid for several repairs to the original unit, even replacing it with a new unit at no cost to plaintiffs in March 1999 after repeated efforts to fix the unit proved unsuccessful. Considering the evidence of record, no reasonable juror could find that Carrier did not intend to live up to its promise to fix the Integra.

In their brief, plaintiffs contend that Carrier knew that regardless of any attempted repairs the Integra would not work as it was configured in plaintiffs' Isuzu, and that any promises Carrier made about fixing the Integra therefore constituted misrepresentations of a material fact. Indeed, on their claim for fraudulent misrepresentation, plaintiffs must establish sufficient evidence that

Carrier misrepresented a material fact. The evidence, however, does not establish that Carrier knew the Integra would not work.[7]

Carrier was not involved with the design of the dual temperature configuration in plaintiffs' Isuzu, nor did it participate in the sale and installation of the Integra. Carrier's initial contact with Crook occurred in October 1998, when Glessing first examined plaintiffs' truck. Glessing found that there were some mechanical and wiring problems with the Integra at that time. (Glessing Dep. at 129-32; *see also* Def. Exs. C and D, (indicating in 1998 and 1999 the following reported problems with the Integra: short in wiring on solenoid valve, bad compressor, blown amp fuse and evaporator locked up, bad control module, failed evaporator sensor, bad diode bridge and transformer, bad relay and resister, problems with the drier and oil evaporator, cracked condenser line, and defects or problems with the idler).) Upon examination, he became concerned that the Integra could not adequately cool both the freezer and the refrigeration units. He testified later that he had never seen an Integra used in a configuration like the one in plaintiffs' Isuzu. Glessing authorized further repairs, which Carrier paid for, and later replacement of the original unit with a new one. During this period of time, Glessing told plaintiff that he stood by the Carrier Integra, and that Carrier would fix its product. Glessing

---

[7]Plaintiff offers the deposition testimony of Doug Edwards, an employee of D-K, to establish that Carrier not only knew that the Integra would be used in a dual temperature application, but also that Carrier approved that use. However, this testimony is inadmissible and will not be considered. Specifically, Edwards testified that CT South informed D-K that Carrier engineers had approved of the use of the Integra in plaintiff's application. Edward's testimony is hearsay within hearsay. Had Edwards heard employees of Carrier make such a comment, or if someone from CT South were to testify about the comments made by Carrier employees, this information would possibly be admissible as an admission by a party opponent. *See* F.R.E. 801(d)(2). However, there is no applicable exception to the hearsay rule that would allow plaintiffs to offer against Carrier the testimony of Edwards concerning the comments of an employee of CT South. *See id.*

8

testified that he believed that the replacement Integra would solve the problems with the breakdowns. (Glessing Dep. at 138.)

Although Glessing believed the Integra was not designed to work in a dual temperature application, Glessing was presented with a situation in October 1998, where the Integra was clearly malfunctioning in an configuration designed by another company (D-K), and with which he was not familiar. With no relevant experience, it was reasonable for Glessing to attempt to fix and later replace the original Integra, both of which were guaranteed under Carrier's "repair or replace" warranty, to determine whether a properly functioning unit could perform as plaintiffs desired. In fact, replacement of the Integra assisted in ruling out the possibility that the condition of the original unit was the source of plaintiffs' troubles. It was not until the plaintiffs continued to experience problems with the second unit that Carrier advised D-K of its belief that the Integra simply could not operate in a dual temperature application like the one in plaintiffs' Isuzu.

The evidence presented hardly proves that Carrier knew the Integra would not work when Glessing told Crook that he would fix the Integra. Rather, the evidence shows that Glessing believed a properly functioning unit might work in plaintiffs' application, that Carrier paid for the repair and replacement, and that once it was that determined that the unit would not function properly, Carrier advised D-K of the continued problems with the use of the Integra in the plaintiffs' vehicle. Accordingly, no reasonable juror could conclude that Carrier knew the Integra would not work when it told plaintiffs that it would fix the unit. Therefore, for the foregoing reasons, defendant is entitled to judgment as a matter of law of plaintiffs' claim for fraudulent misrepresentation.

9

### 2. Fraudulent Suppression

Plaintiffs' fraudulent suppression claim is based on defendant's failure to inform them that the Integra was not designed to function in a dual temperature application and defendant's failure to inform them in October 1998, "that the Integra would not function in the Isuzu." (Pls.' Br. at 17.) Plaintiffs claim that they were induced to act by Carrier's suppression of material facts in that plaintiffs continued to operate the vending business with the Isuzu.

To support a claim for fruadulent suppression, the plaintiffs must present sufficient evidence establishing: (1) that defendant had a duty to disclose an existing material fact; (2) that defendant suppressed this material fact; (3) that defendant's suppression of this fact induced them to act or to refrain from acting; and (4) that plaintiffs suffered actual damage as a proximate result. Furthermore, it is well established that in Alabama "[o]ne can be liable for suppression only of a fact of which one has knowledge." *Dodd v. Nelda Stephenson Chevrolet Inc.*, 626 So. 2d 1288, 1292 (Ala. 1993). Therefore, plaintiffs must establish at least a genuine issue of material fact that the Integra would not adequately function in plaintiffs' Isuzu, and, at the time of the alleged suppressions, Carrier knew this to be true. However, as has been explained above, plaintiffs have not presented sufficient evidence showing that Carrier knew that the Integra would not perform in plaintiffs' Isuzu when it committed the alleged fraud.

In addition, plaintiffs' reliance on the alleged suppression that the Integra was not designed to function in an application like that used in plaintiffs' Isuzu was not reasonable. *See Allstate Ins. Co. v. Ware*, 824 So. 2d 739, 744-45 (Ala. 2002) (stating that "reasonable reliance" is an essential element of a fraudulent suppression claim). During the course of repairs, plaintiffs were notified by Transport Refrigeration, a certified and authorized repair dealer for Carrier

equipment, that the Integra could not function in plaintiffs' dual temperature configuration. Completely overlooking the contrary representations made by Transport Refrigeration, who actually performed most of the repairs on the Integra, plaintiffs claim their reliance on Carrier's representations was nonetheless reasonable because Carrier's employees "were the only refrigeration experts in this case." (Pls.' Br. at 18.) This was clearly not the case, and, therefore, plaintiffs' reliance was not reasonable.

Therefore, for the foregoing reasons, defendant is entitled to judgment as a matter of law on plaintiffs' fraudulent suppression claim.

**3. Breach of Express Warranty**

On a claim for breach of express warranty, plaintiffs must show that a warranty made by the defendant failed of its essential purpose, meaning that the manufacturer refused to repair or replace the malfunctioning component, or failed to do so within a reasonable time. *See Lipham v. Gen. Motors*, 665 So. 2d 190, 192 (Ala. 1995). The evidence establishes that Carrier repaired the Integra under the warranty in a timely fashion. In addition, when Crook continued to be dissatisfied, Carrier replaced the Integra per the warranty. Therefore, the warranty did not fail of its essential purpose.

The warranty at issue clearly states that plaintiffs' exclusive remedy against Carrier is "limited to the repair or replacement of parts or components contained in the [Integra] which under normal use and service malfunction as a result of defects in material or workmanship." Carrier's warranty is permissible under *Ala. Code* § 7-2-719(1)(a) (emphasis added), which states the following with regard to limitation of remedies:

> The agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price *or repair and replacement of nonconforming goods or parts*.

*Id.*

In addition, to the extent that plaintiffs contend Carrier is liable under this claim for damages, rather than for "repair or replacement of nonconforming goods or parts," that contention is without merit because the warranty specifically disclaims liability for such damages. Therefore, because Carrier's lawful warranty did not fail of its essential purpose, defendant is entitled to judgment as a matter of law on plaintiffs' breach of express warranty claim.

### 4. Breach of Implied Warranty

Plaintiffs claim defendant breach implied warranties of merchantability and of fitness for a particular purpose. However, in the express warranty, defendants specifically state that "[t]he foregoing warranties are expressly given in lieu of any other warranties, expressed or implied, *including any implied warranties of merchantability or fitness for a particular purpose, which are hereby disclaimed*." (Pls. Ex. B (emphasis added.)  In Alabama, express warranties that specifically limit remedies and disclaim implied warranties are lawful. *See Central Mining, Inc. v. Simmons Mach. Co., Inc.*, 547 So. 2d 529, 530-31 (Ala. 1989). Plaintiffs here claim they never received the warranty. However, an express warranty will be enforceable even if the plaintiffs claim that they did not receive it. Whether a plaintiff acknowledges receipt of the warranty is not the determining factor. *Winston Indus. Inc. v. Stuyvesant Ins. Co.*, 317 So. 2d 493, 496-98 (Ala.

12

1975). In *Winston Industries*, the Alabama Supreme Court ruled that an express warranty was enforceable despite the plaintiff's denial of having received it. 317 So. 2d at 496.

Although plaintiffs claim they never received the warranties, evidence suggests otherwise. The purchase of the Isuzu was a transaction between commercial entities and the Isuzu was not the first piece of equipment purchased by Crook. Furthermore, the evidence before the court is that the custom and practice was to deliver the Integra warranty to the customer, and the course of dealings, namely the repairs, warranty history, and warranty registration, show that the parties accepted the warranty as the basis of the bargain. Thus, the defendant effectively disclaimed implied warranties.

However, even if an implied warranty applied in this case, because Carrier was not in privity with plaintiffs it cannot be held liable for breach of implied warranties. *See Rhodes v. Gen. Motors Corp.*, 621 So. 2d 945, 947 (Ala. 1993) (stating that there is no right of action on an implied warranty theory against a manufacturer for property damage or economic loss without privity of contract). Crook admitted that his company never contracted with Carrier with regard to the purchase of the Isuzu or the Integra. (Crook Dep. 76, 155, 202; Crook Dep. II at 68-69.) Plaintiffs contend that the case of *Horton Homes, Inc. v. Brooks*, 832 So. 3d 44 (Ala. 2001), which provides an exception to the general rule that implied warranties apply only to the seller, not the manufacturer, is applicable. In that case, the court stated that "implied warranties can apply to the manufacturer when . . . the product has been specially manufactured for a particular customer and the manufacturer can reasonably expect the customer to be affected by any problems with the product." *Id.* at 48. Although plaintiffs specially ordered the Isuzu from D-K, the evidence in this case does not show that the Integra unit was specially manufactured for

plaintiffs' vehicle. Rather, Carrier supplied the Integra as it would for any customer requesting that product. (*See* Glessing Dep. at 42-43.) Furthermore, there is no evidence in this case that Crook's name appeared on the order that followed the Integra though the manufacturing line, as was the case with plaintiffs' manufactured home in *Horton Homes*.

Therefore, for the foregoing reasons, defendant is entitled to judgement as a matter of law on plaintiffs' claims for breach of implied warranties.

### 5. Alabama Extended Manufacturers' Liability Doctrine (AEMLD)[8]

Plaintiffs' contend that CT South and Carrier have retained experts who will supposedly testify "that the application, as designed, will not work" and that this testimony creates a question of fact under the AEMLD. However, Carrier was responsible for the Integra, not the entire dual temperature application. There is no evidence in the record, much less expert testimony, that indicates that either of the Integras was defective within the meaning of the AEMLD. *See Sears, Roebuck & Co. v. Haven Hills Farm, Inc.*, 395 So. 2d 991, 995 (Ala. 1981) (stating that generally expert testimony is required to prove an AEMLD claim). Without proof that the Integra was defective, plaintiffs cannot maintain their AEMLD claim against Carrier.

In addition, plaintiffs' AEMLD claim is barred by the applicable statute of limitations, which is two years. *See Ala. Code* § 6-3-38(*l*); *see also Ethridge v. Genie Indus. Inc.*, 632 So. 3d 1324 (Ala. 1994). A cause of action accrues under the AEMLD when the plaintiff is entitled to maintain an action, *i.e.* at the time of the first legal injury, for example when damage to property is discovered. *Rumford v. Valley Pest Control, Inc.*, 629 So. 2d 623 (Ala 1993). It is immaterial

---

[8]Plaintiffs concede that defendant is entitled to summary judgment on this claim.

whether the full amount of damage is apparent at that time. *Long v. Jefferson County*, 623 So. 2d 1130 (Ala. 1993); *Smith v. Medtronic, Inc.*, 607 So. 2d 156 (Ala. 1992).

Crook testified that he began having problems with the Integra soon after he purchased the Isuzu in November, 1997; specifically, Crook testified that he had the Isuzu serviced around Thanksgiving in 1997. Therefore, plaintiffs' AEMLD cause of action accrued in November, 1997. However, the Complaint in this case was not filed until January 21, 2000, over two years later, well after the limitations period lapsed. Therefore, plaintiffs' AEMLD claim is time-barred, and defendant is entitled to judgment as a matter of law on that claim.

## IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

**DONE** this the 31st day of March, 2003.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

15